IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
PARKERSBURG DIVISION

UGLY, INC.,
a New York corporation,

      Plaintiff,

v.                               ///   CIVIL ACTION NO.   6:10-cv-0693

COYOTE GONE WILD, LLC, a West
Virginia limited liability company, and
SUZI RAMIREZ, an individual,

      Defendants.

## COMPLAINT

Plaintiff, Ugly, Inc. ("Plaintiff" or "Ugly"), by and through its undersigned counsel, as and for its complaint against defendants, Coyote Gone Wild, LLC and Suzi Ramirez (collectively "Defendants"), alleges as follows:

### NATURE OF THE ACTION

1. This is an action for trademark infringement, trademark dilution and trademark tarnishment arising under Sections 32(1)(a), 43(a) and 43(c) of the Federal Trademark Act (the "Lanham Act"), 15 U.S.C. §1051 et. seq., and related State causes of action. Plaintiff seeks injunctive relief and monetary damages as a result of Defendants' actions in, *inter alia*, trading off of Plaintiff's registered trademark.

### PARTIES

2. Plaintiff is a corporation organized and existing under the laws of the State of New York, with its principal place of business in Cornwall, New York. Plaintiff is the owner of

1

the incontestable trademark "COYOTE UGLY" which it licenses to twelve bars and saloons throughout the United States in addition to three saloons in Europe, all of which operate under the name "Coyote Ugly."

3. The incontestable trademark COYOTE UGLY was duly registered on March 17, 1997 with the U.S. Patent and Trademark Office ("USPTO") in International Class 42 for use in connection with "bar and tavern services, namely, the provision of food and drink for consumption" (U.S. Registration No. 2,144,582) (the "Mark"). The Mark was assigned to Ugly on October 13, 1998.

4. In addition to the Mark, Ugly is also the owner of six other incontestable federal trademark registrations of the mark COYOTE UGLY in International Classes 14, 16, 21, 25, 34, and 42 (U.S. Registration Nos. 2,144,582; 2,565,496; 2,594,526; 2,559,097, 2,632,027; and 2,654,613). Ugly is also the owner of United States federal Registration No. 3,078,183 for COYOTE and United States federal Registration No. 3,344,586 for COYOTE GIRL.

5. Upon information and belief, defendant SUZI RAMIREZ ("Ramirez") is an individual citizen of the State of West Virginia who resides in this judicial district.

6. Upon information and belief, Ramirez has owned and been personally responsible for running the day-to-day operations of a bar or tavern known as "Coyote Gone Wild" located at 800-802 7th Street, Parkersburg, West Virginia, 26101-9092. Upon further information and belief, on or about March 4, 2008, Ramirez formally registered her business under the name "COYOTE GONE WILD, LLC."

7. Upon information and belief, defendant, COYOTE GONE WILD, LLC ("CGW"), is a limited liability company organized and existing under the laws of the State of West Virginia with its principal place of business located in Parkersburg, West Virginia.

8. Upon information and belief, Ramirez is the organizer and sole member of CGW.

## JURISDICTION AND VENUE

9. This civil action arises under the Lanham Act, 15 U.S.C. §1051 et. seq. This Court has subject matter jurisdiction over the federal claims set forth herein pursuant to 15 U.S.C. §1121(a) and 28 U.S.C. §§1331, 1332 and 1338. The amount in controversy exceeds $75,000. This Court has subject matter jurisdiction over the claim arising under West Virginia State law pursuant to 28 U.S.C. §1338 and pursuant to the doctrine of supplemental jurisdiction, 28 U.S.C. §1367(a).

10. Defendants are subject to personal jurisdiction within this State and judicial district because Defendants are residents of this State and judicial district, and these claims arise from actions Defendants committed in this State and judicial district, and insofar as these claims arise out of Defendants' transaction of business within this State and involve tortious acts committed within this district and State having injurious consequences within the State and judicial district and/or otherwise within the jurisdiction of this court.

11. Venue is proper in this district under 28 U.S.C.§§1391(b) because Defendants reside in this judicial district in the State of West Virginia, and because a substantial part of the events or omissions giving rise to these claims occurred in this district.

## BACKGROUND

12. The COYOTE UGLY Mark has been used in commerce since at least as early as 1993 in New York City, and since 2001, Plaintiff has licensed the use of the Mark to bars and saloons throughout the United States (the "Coyote Ugly Bars"). During that time, the Mark has become extremely well-known and famous and is associated with Plaintiff as its source and origin. Ugly has an operational web site located at www.coyoteuglysaloon.com.

3

13. The Coyote Ugly Bars are characterized by, among other things, employment of all female bartenders and waitresses, who are called "Coyotes." The Coyotes are clothed in jeans or jean shorts, cropped shirts, cowboy boots and hats. The Coyotes entertain the Coyote Ugly Bars' customers by singing and performing clogging-style dances on the bar. The interiors of the Coyote Ugly Bars are characterized by an intentionally rusticated or weathered style and frequently, by the items of women's lingerie hung behind the bar. The above characteristics constitute the trade dress that is uniquely distinctive of the Coyote Ugly Bars. The Coyote Ugly Bar trade dress is non-functional. As such, the Coyote Ugly trade dress is entitled to protection from infringing uses either (a) because of its inherently distinctive character, or (b) because it has acquired distinctiveness through "secondary meaning" by having become uniquely associated, over time, with the Coyote Ugly Bars.

14. In 2000, Disney/Touchstone Pictures released the movie *Coyote Ugly* (the "Movie"), which was based on the Coyote Ugly Bars and upon the activities of Ugly's founder, Liliana Lovell, in founding and developing the Coyote Ugly Bars. Disney/Touchstone Pictures licensed the Mark COYOTE UGLY from Plaintiff in connection with the Movie.

15. The Movie depicted many features of the Coyote Ugly Bars, including but not limited to the trade dress described in paragraph 13 hereof. An enormous success at the box office, grossing approximately one hundred and fourteen million dollars ($114,000,000.00) in worldwide ticket receipts, the Movie served to further increase the fame of the Mark. The Movie grossed revenues totaling more than $60 million in the United States and Canada and well more than $50 million internationally.

16. Indeed, the fame of the COYOTE UGLY Mark is also evidenced by the frequent commentary in the nation's news media about the Coyote Ugly Bars. Plaintiff, Liliana Lovell

4

and the Mark routinely receive a wealth of unsolicited national publicity. The most notable discussions have appeared in The Wall Street Journal, Maxim, GQ (Gentlemen's Quarterly), Crain's New York Business: 40 Under 40, Entertainment Weekly, The New York Post, and The New York Times. Moreover, the opening of each new Coyote Ugly Bar is greeted with significant fanfare in the local and regional media. For example, the recent opening of the Coyote Ugly Bar in Oklahoma City, Oklahoma garnered extensive press coverage of both Liliana Lovell and the Coyote Ugly Bar.

17. The fame of the Coyote Ugly Bars and the Mark have been further elevated to heightened prominence by Country Music Television's ("CMT") very popular reality television series about the Coyote Ugly Bars entitled "The Ultimate Coyote Ugly Search," as well as by a celebrated television special that aired on CMT in 2004. The Ultimate Coyote Ugly Search series ran for three seasons (2006-2008) and was CMT's highest rated episodic series at that time. The series featured young female contestants competing against each other in singing, dancing and bartending challenges in hopes of being selected to become a Coyote.

18. The Mark's fame is also indicated by the frequency with which it is referenced in pop-culture, having been mentioned on television programs such as Jeopardy, as a Final Jeopardy answer, King of Queens, Family Guy, The Office and others.

19. The COYOTE UGLY Mark is the subject of trademark registrations and pending applications in more than fifty jurisdictions worldwide.

## DEFENDANTS' UNLAWFUL ACTS

### *Infringement of Registered Mark*

20. After Plaintiff was alerted to Defendants' infringement, through its attorneys, Plaintiff sent Defendants a letter via Federal Express dated November 19, 2009 demanding

Defendants to cease and desist from infringing Plaintiff's valuable intellectual property. To date, Defendants have in no way responded to Plaintiff's repeated contact attempts. Thus, all of Defendant's continued infringing acts from November 2009 to the present have been with full knowledge of Plaintiff's intellectual property rights and its objection to Defendants' unlawful acts. In sum, knowing of the Coyote Ugly Bars, and knowing of the valuable goodwill and extensive recognition that Ugly has already established in the marketplace for its COYOTE UGLY Mark, Defendants have, intending to trade on such goodwill and recognition, without Plaintiff's consent (a) adopted the name "Coyote Gone Wild" as the name of their bar; (b) have displayed a sign on the exterior of the establishment reading "Coyote Gone Wild;" (c) have registered their limited liability corporation under the name, "Coyote Gone Wild, LLC;" (d) have held "Coyote Thursday" events at the establishment; (c) have referred to their employees as "Coyote dancers" or "Coyote Girls;" (d) have caused and continue to cause their staff to carefully imitate the trade dress associated with Plaintiff's Coyotes; and (e) have aggressively promoted and continue to aggressively promote the establishment and the "Coyote Thursday" events in a manner that causes patrons to believe that the bar and/or event is associated with or sanctioned by Ugly. A true and genuine copy of Plaintiff's November 19, 2009 letter is annexed to the Complaint and identified as Complaint Exhibit A. In light of the above knowledge and bad faith this is an exceptional case justifying attorneys' fees.

21.     Defendants have imitated the trade dress of the Coyote Ugly Bars by among other things, employing young women called "Coyote dancers" or "Coyote Girls" who are clothed in jeans, cropped shirts and dance on the bar and further, by decorating their establishment in a rusticated manner.

22. The name "Coyote Gone Wild" is a colorable imitation of the "COYOTE UGLY" Mark, and there is substantial similarity between the Mark and "Coyote Gone Wild" as well as between the trade dress and other aspects of Defendants' business and that of genuine Coyote Ugly Bars.

23. Defendants, in adopting a name which they are using in commerce that encompasses the key element of Plaintiff's trademark, through mimicking Plaintiff's trade dress and promoting their services to customers by using a name substantially similar to the Mark, have caused and/or are likely to cause confusion, mistake and deception within the consuming public as to the source, origin, sponsorship or approval of Defendants' bar and services, particularly at the point of purchase, such that the purchasing public is likely to incorrectly believe that Defendants' establishment is sanctioned and endorsed by, or otherwise associated with the Coyote Ugly Bars.

24. Defendants have acted with knowledge that their use, reproduction, and imitation of Plaintiff's registered Mark was, and is, intended to cause the confusion, mistake, and deception described above.

25. Defendants have committed such infringing acts deliberately, intentionally willfully, and in bad faith, without justification or excuse, and with a callous and reckless disregard for Plaintiff's rights or for the effects of Defendants' infringing conduct upon Plaintiff's business, for the purpose of unlawfully appropriating and trading on the good will and reputation of Plaintiff. Defendants' bad faith is demonstrated by the foregoing facts.

26. Plaintiff's rights in the Mark are valid and continuing. No other person or entity has lawfully used or emulated the use of the Mark in connection with bar and tavern services

during the period 1993 to the present. Plaintiff has not consented to Defendants' emulation of the use of Plaintiff's Mark and trade dress.

### *Dilution of a Famous Mark*

27. Plaintiff's Mark COYOTE UGLY is famous and is inherently distinctive. Plaintiff's Mark is famous because it is widely recognized by the general consuming public of the United States as designating Plaintiff as a source of services.

28. Currently, gross annual revenues for the Coyote Ugly brand exceed or approximate $30,000,000. Further, there is significant actual recognition of the Mark and the Mark is registered on the Principal Register of the United States Patent and Trademark Office.

29. Defendants' use in commerce of its mark which is similar to Plaintiff's Mark is likely to cause dilution by blurring of Plaintiff's trade name and famous registered trademark. The blurring is caused by the association arising from the similarity between Defendants' mark and Plaintiff's Mark which impairs the distinctiveness of the Mark, thereby impairing the Mark's ability to identify and distinguish Plaintiff's services, such that dilution is likely.

30. Defendants have committed such infringing acts for commercial purposes, for their commercial benefit, in interstate commerce, in direct competition with the Coyote Ugly Bars, and with predatory intent. Defendants' activities affect interstate commerce including by way of Defendants' internet website, coyotegonewild.net, which has allowed, and may again in the future allow, for nationwide promotion and advertising. Further, Defendants' website has stated that Defendants' service area specifically includes areas within the State of Ohio. The website has stated: "Service Area: Belpre, Newport, Beverly, Marietta, Columbus, Fairmont, Elizabeth, Morgantown, Clarksburg, Wood County, Parkersburg, Mineral Wells, & Reno, Coolville, Little Hocking, & Washington County, OH." Plaintiff reasonably believes that

Defendants' website may in the future provide the same or similar nationwide promotion and advertising as has previously been provided by Defendants' website all to Plaintiff's detriment and damage. Defendants' actions have had a substantial adverse effect on interstate commerce and on Plaintiff's interstate use of the Mark. Upon information and belief, Defendants target the same purchasers and users as Plaintiff.

### *Tarnishment of a Famous Mark*

31. Defendants' infringing acts are likely to cause tarnishment of Plaintiff's "COYOTE UGLY" Mark damaging Plaintiff's trade name and registered trademark, and goodwill. Specifically, the association arising from the similarity between Defendants' mark and Plaintiff's Mark is harming the reputation of Plaintiff's Mark.

32. Defendants' establishment is an imitation of a Coyote Ugly Bar, but one that fails to observe the standards and specifications to which all genuine Coyote Ugly Bars are held. The inferior, shoddy appearance and generally low quality of the Coyote Gone Wild establishment is likely to tarnish the Mark, which Plaintiff has invested significant time and money establishing.

33. Further, Defendants' establishment features various stages, a stripper pole and young female employees dancing for tips. Defendants have previously hosted two female wrestling events with multiple young women wrestling in cake batter. Upon information and belief, these events occurred on or about November 15, 2009 and February 14, 2010. Part of Plaintiff's overall corporate ethos is that its employees are valuable team members with demonstrable talents who are not debased and/or objectified in such a tawdry manner.

34. Further tarnishing the Mark is Defendants' combination of the COYOTE UGLY mark with the GIRLS GONE WILD mark owned by GGW Marketing, LLC, an entity that sells pre-recorded adult entertainment videotapes and offers access to an adult entertainment website.

35. The above practices associate the Mark with a derogatory, unwholesome and unsavory context that is likely to adversely reflect upon Ugly's services, thereby tarnishing the Mark, as well as irreparably harming the goodwill and image of COYOTE UGLY among members of the public who suffer confusion as a result of Defendants' infringing acts.

## PLAINTIFF'S DAMAGES

36. Defendants' infringing acts have caused Plaintiff to suffer substantial damages and a loss of sales and profits which Plaintiff would have made but for said acts of Defendants, in an amount to be determined at trial (and in any event in excess of $75,000), and have caused and threaten Plaintiff with irreparable injury for which Plaintiff has no adequate remedy at law.

37. Defendants have been unjustly enriched and Plaintiff is entitled to an accounting of the profits of Defendants.

## FIRST CLAIM
### (Federal Trademark Act, 15 U.S.C. § 1114(1)(a))

38. Plaintiff incorporates the allegations set forth in paragraphs 1 through 37 of its Complaint as though fully set forth herein.

39. Therefore, Defendants are liable to Plaintiff for violation of Section 32(a)(1) of the Lanham Act, 15 U.S.C. § 1114(a)(1).

## SECOND CLAIM
### (Federal Trademark Act, 15 U.S.C. §1125(a))

40. Plaintiff incorporates the allegations set forth in paragraphs 1 through 37 of its Complaint as though fully set forth herein.

41. Defendants are liable to Plaintiff for violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

## THIRD CLAIM
### (Federal Trademark Act, 15 U.S.C. §1125(c))

42. Plaintiff incorporates the allegations set forth in paragraphs 1 through 37 of its Complaint as though fully set forth herein.

43. Defendants are liable to Plaintiff for trademark dilution and tarnishment in violation of Section 43(c) of the Lanham Act, 15 U.S.C. §1125(c).

## FOURTH CLAIM
### (Federal Trademark Act, 15 U.S.C. §1117(a))

44. Plaintiff incorporates the allegations set forth in paragraphs 1 through 37 of its Complaint as though fully set forth herein.

45. Defendants are liable to Plaintiff for attorneys' fees as this is an exceptional case of trademark infringement pursuant to Section 35(a) of the Lanham Act, 15 U.S.C. §1117(a).

**WHEREFORE**, Plaintiff demands judgment in its favor and against Defendants as follows:

1. On all Claims against Defendants, for Plaintiff's actual and consequential damages resulting from Defendant's wrongful acts as alleged herein, in an amount to be determined at trial, but greater than $75,000;

2. On all Claims against Defendants, for Defendants' profits resulting from Defendants' wrongful acts as alleged herein, in an amount to be determined at trial;

3. On all Claims against Defendants, for punitive damages in an amount to be set by the Court, but no less than the sum of $10,000,000.00, as a consequence of Defendants' willful and reprehensible acts;

4. On all Claims against Defendants, a preliminary and permanent injunction against further use of the name "Coyote Gone Wild" or any formative of the COYOTE UGLY Mark, and any use of the trade dress associated with Plaintiff's Coyote Ugly Bars, and against otherwise infringing, diluting or tarnishing Plaintiff's valuable Mark and trade dress;

5. On all Claims, a preliminary and permanent injunction against Defendants barring them from:

    (a) further use of the name "Coyote Gone Wild" or any other formative of the COYOTE UGLY Mark, in whole or as part of the name of any product, services or business entity that is owned, supervised, or controlled by Defendants, and that Defendants now offer, or will offer to the public, including, but not limited to, bar and tavern services;

    (b) referring to, in connection with the advertisement, promotion or provision of any such product or services: (i) the words "Coyote" or any other formative of the word "Coyote," or any word colorably similar thereto, (ii) the word "Ugly," any formative of the word "Ugly," or any word colorably similar thereto, and (iii) any words colorably similar to the phrase "Coyote Ugly;"

    (c) any use of the trade dress associated with genuine licensed Coyote Ugly Bars; and

(d) otherwise infringing, diluting or tarnishing Plaintiff's valuable Mark and trade dress;

6. Plaintiff's attorneys' fees, costs and disbursements in connection with this action; and

7. Such other and further relief as this Court deems just and equitable.

**UGLY, INC.,**
**Plaintiff**

**By Counsel**

*/s/ Andrew G. Fusco/*

Andrew G. Fusco (WV Bar #1317)
Paul E. Parker, III (WV Bar # 2813)
BOWLES RICE McDAVID GRAFF & LOVE LLP
2400 Cranberry Square
Morgantown, West Virginia 26508
(304) 594-1000
afusco@bowlesrice.com
eparker@bowlesrice.com